**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

SPRINT COMMUNCIATIONS COMPANY, L.P.,

                                  Plaintiff,                  1:17-cv-01271 (BKS/CFH)

v.

ALBANY COUNTY, NEW YORK,

                                  Defendant.

---

**APPEARANCES:**

*For Plaintiff:*
John A. Mancuso
Harris Beach PLLC
677 Broadway, Suite 1101
Albany, NY 12207

J. Emmett Logan
Stinson Leonard Street LLP
1201 Walnut Street, Suite 2900
Kansas City, MO 64106

*For Defendant:*
Peter A. Lauricella
Christopher A. Priore
Wilson Elser Moskowitz Edelman & Dicker LLP
200 Great Oaks Boulevard, Suite 228
Albany, NY 12211

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I.    INTRODUCTION

      Plaintiff Sprint Communications Company L.P. ("Sprint") brings this diversity action against Defendant Albany County, New York (the "County") for appointment of an arbitrator, (Dkt. No. 1), and moves for appointment of an arbitrator or arbitrators, (Dkt. No. 4), pursuant to

Section 5 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16. The County opposes Sprint's motion and cross-moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), (Dkt. No. 24), which Sprint has opposed, (Dkt. No. 25). For the reasons that follow, the County's cross-motion is denied, and Sprint's motion to appoint an arbitrator or arbitrators is granted.

## II.   FACTS[1]

In 1986, US Telecom, Inc. ("US Telecom")—Sprint's predecessor in interest—entered into a twenty-year "Fiber Optic Easement Agreement" to construct and maintain telecommunications lines running within a railroad right-of-way owned by Guilford Transportation Industries, Inc. ("Guilford"). (Dkt. No. 1, ¶ 9). Guilford's interest was subsequently transferred to the Delaware & Hudson Railway Company, Inc., doing business as Canadian Pacific Railway (the "Railroad"). (Dkt. No. 1, ¶¶ 9, 14). The right-of-way "includes a segment between Mile Post 1.90 . . . in the City of Albany, New York, and Mile Post 10.896 . . . in the Village of Voorheesville, New York (the 'Trail Segment')." (*Id.* ¶ 10). US Telecom installed the lines within the right-of-way shortly thereafter. (*Id.* ¶ 11). In 2006, upon expiration of the original Easement Agreement, Sprint and the Railroad executed a twenty-year "License Agreement" extending Sprint's right to operate and maintain its telecommunications lines within the right-of-way, and granting Sprint the option to renew the license for an additional twenty-year term. (*Id.* ¶¶ 15–17). From 1986 until 2015, US Telecom and Sprint operated and maintained the telecommunications lines in the right-of-way "without interference by . . . the

---

[1] The following allegations, which are taken from the Complaint and its attachments, are assumed to be true for purposes of Defendant's cross-motion to dismiss. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). The Court has also reviewed and considered Plaintiff's motion, its attachments, and the submissions of the parties. (Dkt. Nos. 4, 24, 25, 26).

2

Railroad" and without obstruction from the "railroad tracks or other railroad facilities or equipment." (*Id.* ¶ 18).

In December 2008, the Railroad sold the County the Trail Segment through which Sprint's right-of-way ran—in December 2009, "the Railroad quitclaimed the Trail Segment to the County." (*Id.* ¶¶ 19–20). Then, "[i]n early 2010, representatives of the County informed representatives of Sprint that the County intended to construct a recreational trail (the 'Trail') in the Trail Segment." (*Id.* ¶ 21). The County, however, did not proceed with the Trail plan until April 2015, when it "provided to the one-call notification system . . . a notice of intent to engage in excavation on the Trail," thereby informing Sprint of its plans to commence construction. (*Id.* ¶ 23). In May 2015, "Sprint and the County entered into a Preliminary Agreement . . . under which the parties agreed that Sprint would" relocate its telecommunications lines underlying the section of the right-of-way designated as "Segment I" prior to "any further work [being] performed on the Trail." (*Id.* ¶ 24). The parties, unable to agree on whether Sprint or the County would ultimately bear the cost of relocating the telecommunications system, specified in the Preliminary Agreement that Sprint would proceed with the relocation work at its own expense while reserving the right to seek reimbursement from the County. (Dkt. No. 1, ¶¶ 25, 32, 33; Dkt. 4-3, ¶ 1–2). The Preliminary Agreement further provided that:

> [The parties] reserve the right to have the issues raised by their above said contentions and any other disputes arising out of or related to this Agreement resolved as follows: If negotiations between the PARTIES do not resolve all of said issues and other disputes, the PARTIES agree to submit any unresolved issues and other disputes to binding arbitration by a panel of three arbitrators selected by mutual agreement of the PARTIES. If the PARTIES are unable to agree on a panel of three arbitrators, each PARTY shall appoint an arbitrator and the two appointed arbitrators shall select a third. Any in-person arbitration hearing shall be conducted within the County of Albany, New York.

3

(Dkt. No. 1, ¶ 34).  Sprint has completed the Segment I relocation work, incurring $330,807.39 in costs.  (*Id.* ¶ 26).

In December 2016, the parties "entered into a First Amendment to the Preliminary Agreement . . . under which the parties agreed that the provisions of the Preliminary Agreement would apply to the relocation" of the telecommunications lines underlying the section of the Trail designated as "Segment II."  (*Id.* ¶ 29).  The County, however, "did not notify Sprint of its plans to begin construction" of Segment II, requiring Sprint "to perform the Relocation Work in Segment II after the Telecommunications System had been paved over," thus "substantially increas[ing] the cost of the Relocation Work in Segment II."  (*Id.* ¶ 28).  Sprint has completed "portion of the Relocation Work in Segment II," at a cost of $146,391.61.  (*Id.* ¶ 31).

Sprint "requested that the County reimburse it for the Relocation Work costs that it has incurred in Segments I and II," and the County denied the request by letter dated November 22, 2016.  (*Id.* ¶¶ 32–33).  On April 20, 2017, Sprint's attorney requested a telephone conference with the County's attorney to "discuss settlement negotiations, arbitration procedures, and the appointment of an arbitration panel"—Sprint did not receive a response.  (*Id.* ¶ 35).  Concluding that the parties "were unable to agree on a panel of three arbitrators," Sprint served the County with a Demand for Arbitration on June 12, 2017, appointing J. Kevin Hayes as its designated arbitrator, (*id.* ¶ 38), and seeking reimbursement for costs incurred in relocating its telecommunication lines in Segments I and II, (*id.* ¶ 39).  The parties participated in a telephone conference on June 20, 2017, during which the County argued that Sprint had not adequately attempted to agree upon a panel of three arbitrators as required by the Preliminary Agreement.  (*Id.* ¶ 41).  The County further stated that it would propose a panel of three arbitrators by July 4, 2017.  (*Id.* ¶ 42).  Between October 23, 2017 and November 8, 2017, more emails, proposals,

4

counterproposals, and missed deadlines ensued—by November 8, 2017, the parties had still not agreed to a panel of arbitrators. (Dkt. No. 1, ¶¶ 50–55). As the County had failed to appoint its own designated arbitrator, "Sprint [was] unable to proceed with the arbitration." (*Id.* ¶ 56).

On November 17, 2017 and November 22, 2017, Sprint filed the instant "Complaint for Appointment of an Arbitrator Under 9 U.S.C. § 5," (Dkt. No. 1), and "Motion for Appointment of an Arbitrator Under 9 U.S.C. § 5," (Dkt. No. 4), respectively. On January 10, 2018, the County responded in opposition to Sprint's motion and cross-moved to dismiss the Complaint. (Dkt. No. 24).

### III.   APPLICABLE STANDARDS

Sprint has moved to appoint an arbitrator under Section 5 of the FAA.[2] "In enacting § 5 of the FAA, Congress anticipated that breakdowns in the arbitrator selection process might indefinitely delay arbitration proceedings, and sought to cure this problem by granting parties access to a neutral forum, the courts, to correct such failures." *Stop & Shop Supermarket Co. v. United Food & Commercial Workers Union Local 342*, 246 F. App'x 7, 11 (2d Cir. 2007); *see also Utica Mut. Ins. Co. v. Emp'rs Ins. Co.*, No. 12-cv-1293, 2013 WL 12290841, at *4 (N.D.N.Y. Sept. 26, 2013).[3] In short, when "an arbitration agreement provides 'a method of naming or appointing . . . an umpire,' Section 5 of the FAA mandates that 'upon the application of either party to the controversy the court *shall* designate and appoint an . . . umpire' if either (1) 'any party [to the agreement] shall fail to avail himself of such method,' or (2) 'for *any other reason* there shall be a lapse in the naming of an . . . umpire.'" *Odyssey Reins. Co. v. Certain*

---

[2] Sprint has also filed a Complaint seeking appointment of an arbitrator. (Dkt. No. 1). The Federal Rules of Civil Procedure explain that the federal rules "govern proceedings under the following laws, except as these laws provide other procedures: . . . (B) 9 U.S.C., relating to arbitration." Fed. R. Civ. P. 81(a)(6). Section 6 of the FAA provides that "any application to the court" under the FAA "shall be made and heard in the manner provided by law *for the making and hearing of motions*." 9 U.S.C. § 6 (emphasis added).

[3] Lexis citation unavailable.

5

*Underwriters at Lloyd's London Syndicate 53*, 615 F. App'x 22, 22–23 (2d Cir. 2015) (alteration and emphasis in original) (quoting 9 U.S.C. § 5).[4]  The Second Circuit has explained "that the 'lapse' referred to in § 5 means 'a lapse in time in the naming of the' arbitrator or in the filling of a vacancy on a panel of arbitrators, or some other mechanical breakdown in the arbitrator selection process." *In re Salomon Inc. Shareholders' Derivative Litig.*, 68 F.3d 554, 560 (2d Cir. 1995) (citation omitted).

## IV.    DISCUSSION

Sprint argues that because it has "tried for more than six months to obtain the County's cooperation in the appointment of a panel of arbitrators" and the "County has refused," the Court has "the duty to make that appointment" in accordance with the FAA.  (Dkt. No. 4-4, at 8).  Specifically, Sprint seeks entry of an order "appointing an arbitrator . . . under the terms of the Preliminary Agreement, on a panel consisting of Arbitrator [George] Carpinello, the arbitrator designated by the Court, and a third arbitrator to be selected by those two."  (*Id.*).  The County argues in response that granting such relief would "allow the Sprint [sic] to essentially deprive the County from choosing its preferred arbitrator, despite the fact that it is Sprint, not the County, that failed to follow the requirements of the Arbitrator Appointment Clause."  (Dkt. 24-4, at 5).  Instead, the County suggests three alternatives to Sprint's proposed resolution: (i) imposition by the Court of a thirty-day deadline for the parties to mutually agree to a panel of three arbitrators; (ii) "the appointment of the full panel . . . consisting of Mr. Carpinello, Mary Beth Slevin and Hon. Bernard Malone"; or (iii) "the appointment of Mary Beth Slevin . . . as the County's

---

[4] Section 5 of the FAA provides: "If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but . . . if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein . . . ."  9 U.S.C. § 5.

designated arbitrator, and provide a period of time for Sprint to designate its arbitrator." (Dkt. No. 24-4, at 21–22).

In this case, neither party challenges the notion that their underlying dispute is subject to arbitration under the Preliminary Agreement. It is also undisputed that, in the Agreement, the parties provided "for a method for naming or appointing . . . arbitrators," 9 U.S.C. § 5, and that this method requires the parties to: (i) select panel of three arbitrators chosen by "mutual agreement of the parties"; and (ii) in the event that the parties are unable to agree on a panel, separately designate two arbitrators, who together, "shall select a third." (Dkt. No. 4-3, ¶ 3). The parties do dispute, however, whether the other has "failed to avail" itself of the "method of naming or appointing an arbitrator or arbitrators," or whether there has been a "lapse in the naming of an arbitrator or arbitrators" within the meaning of Section 5 of the FAA. The County argues that Sprint "violated the Arbitrator Appointment Clause," (Dkt. No. 24-4, at 7), when it "refused to engage," (Dkt. No. 26, at 10), in the process to empanel three arbitrators, and when it skipped directly to appointing its own. Sprint, on the other hand, argues that a "lapse" has occurred, as evidenced primarily by the "protracted" yet unsuccessful efforts of the parties between April and November of 2017 to agree on a panel of arbitrators or to appoint two party-designated arbitrators. (Dkt. No. 4-4, at 3).

Although the parties disagree on the source of the months-long delay, under either party's theory of the cause of the delay—"lapse" or failure of a party to "avail" itself—Section 5 of the FAA requires this Court's intervention upon "application of either party to the controversy." Indeed, the delay itself and the ongoing dispute as to its cause is indicative of a "mechanical breakdown in the arbitrator selection process" that warrants appointment of arbitrators. *In re Salomon*, 68 F.3d at 560. The record indicates that the parties sharply disagree on the meaning

7

of the terms of Preliminary Agreement and whether adequate effort has been expended in mutually agreeing upon a panel of arbitrators, causing an impasse in the arbitrator selection process. Upon review of the arbitration agreement, the submissions of the parties, and the parties' proposed resolutions, it appears that the parties are unable to—and will continue to be unable to—come to an agreement as to appointment of a three-arbitrator panel, as required by the agreement. *See Utica Mut. Ins. Co.*, 2013 WL 12290841, at *4 ("Plaintiff contends there is a lapse in selecting the third arbitrator or umpire because defendants have refused to proceed with selecting this third arbitrator as required by the arbitration agreement. It is well settled that this type of claim may be pursued under Section 5 of the FAA."). "This deadlock has caused a 'lapse in the naming of an . . . umpire,'" and accordingly, this court has "not only the authority but the obligation to appoint an umpire to correct a breakdown in the umpire selection process." *Odyssey Reins. Co.*, 615 F. App'x at 23 ("[T]he record demonstrates that the parties sharply dispute the meaning of various terms in the parties' arbitration agreements, resulting in a deadlock . . . and causing Odyssey to refuse to proceed to the next phase of the umpire selection process.").

"Arbitration agreements are aimed at amicable determination of disputes with results which both parties will be willing to accept. Toward this end, it is desirable that the arbitration panel consist of arbitrators chosen by each of the parties." *Lobo & Co. v. Plymouth Nav. Co. of Monrovia*, 187 F. Supp. 859, 860 (S.D.N.Y. 1960) ("The arbitration board shall be made up of [two arbitrators chosen by the parties], who shall appoint an umpire pursuant to" the arbitration agreement). Sprint has chosen George Carpinello as its designated arbitrator, (Dkt. No. 25, 2–3), while "Mary Beth Slevin . . . would be the County's pick for an arbitrator," (Dkt. No. 24-4, at 20 n.8). Neither party has expressed objections to the other's selection. (Dkt. No. 25, at 2; Dkt. No.

26, at 12–13). Finally, both acknowledge that, under the terms of the Preliminary Agreement, should the Court appoint the arbitrators identified by each party, those arbitrators "shall select a third" arbitrator together. (Dkt. No. 4-4, at 8; Dkt. No. 26, at 12).

Accordingly, George Carpinello and Mary Beth Slevin are appointed as arbitrators selected by Sprint and the County, respectively, and together they shall select a third arbitrator in accordance with the Preliminary Agreement. *Pemex-Refinacion v. Tbilisi Shipping Co.*, No. 04-cv-02705, 2004 WL 1944450, at *7, 2004 U.S. Dist. LEXIS 17478, at *24–25 (S.D.N.Y. Aug. 31, 2004) (ordering that, "[w]ithin 20 days of the date of this order, each party shall appoint a[n] . . . arbitrator" and that "within 20 days . . . those arbitrators shall select a third arbitrator, and that arbitration shall go forward in accordance with the terms of the arbitration agreement"); *ACEquip Ltd. v. Am. Eng'g Corp.*, No. 01-cv-676, 2001 WL 1868124, at *3, 2001 U.S. Dist. LEXIS 23888, at * 9 (D. Conn. Sept. 4, 2001), *aff'd*, 315 F.3d 151 (2d Cir. 2003) (ordering appointment of two arbitrators chosen by the parties, and explaining that "the two chosen arbitrators shall within ten days choose a third arbitrator"); *New Eng. Reins. Corp. v. Tenn. Ins. Co.*, 780 F. Supp. 73, 79 (D. Mass. 1991) (ordering the parties to "submit to arbitration before a panel consisting of [two arbitrators chosen by the parties], and a third arbitrator chosen by the process set forth in the agreement").[5]

## V.  CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendant's cross-motion to dismiss (Dkt. No. 24) is **DENIED**;

---

[5] As a general matter, Sprint is entitled to costs, "other than attorney's fees," associated with the instant dispute. Fed. R. Civ. P. 54(d)(1). Sprint's Reply and Response in Opposition to Defendant's Cross-Motion to Dismiss asserts, for the first time, that it is entitled to attorney's fees associated with this action. (Dkt. No. 25, 9–12). As Sprint acknowledges, however, it did not request an award of attorneys' fees in either its Complaint or motion. (Dkt. No. 25, at 8–9). Thus, the Court declines to consider the issue here, in the limited context of an application to appoint an arbitrator under 9 U.S.C. § 5.

**ORDERED** that Plaintiff's motion for appointment of an arbitrator is (Dkt. No. 4) is **GRANTED** to the extent that that George Carpinello and Mary Beth Slevin are appointed as the parties' designated arbitrators; and it is further

**ORDERED** that, the parties shall direct George Carpinello and Mary Beth Slevin to appoint a third arbitrator within **thirty (30) days** of the date of this Order pursuant to the terms of the Preliminary Agreement; and it is further

**ORDERED** that Plaintiff's motion is **DENIED** in all other respects; and it is further

**ORDERED** that Plaintiff must file a status letter within **forty five (45) days** of the date of this Order indicating whether there is any basis for keeping this case open.

**IT IS SO ORDERED.**

Dated: May 25, 2018
Syracuse, New York

Brenda K. Sannes
U.S. District Judge